FILED
KENNETH S. GARDNER

2014 JUN 16 PM 3: 23

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                      )
                                            )   CHAPTER 7
ROBERT J. INTLEKOFER,                       )
SSN: XXX-XX-1095                            )   CASE NO. 14-11530-HRT
                                            )
                                            )
        Debtor.                             )

---

**OBJECTION TO TRUSTEE'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY
TO LOW BIDDER RECYCLED PROPERTIES LLC
LOT 16, BLOCK 1, DELLWOOD HEIGHTS SUBDIVISION, COUNTY OF LARIMER,
FORT COLLINS, COLORADO KNOWN AS 2416 HAWTHORNE COURT**

---

Sisu Investors LP, a Colorado Limited Partnership, herein ("Sisu") by their Counsel Gassman Law Firm LLC moves the Court order Trustee to honor the overbid provided by Sisu to Trustee on 28 April 2014. Sisu accepts and supports all analysis, reasons and justification for sale provided by Trustee objecting only to the authority to sell to Recycled Properties LLC ("Recycled").

1.      On 23 April 2014 Trustee accepted a contract for sale from Recycled.

2.      On 28 April 2014 an overbid was submitted to Trustee by Sisu. (Exhibit A) Sisu is a good faith purchaser within the meaning of Bankruptcy Code Section 363(m).

3.      Sisu has offered $239,500 vs the $235,000 offered by Recycled.

4,      This amount is not only more than offered by Recycled but it is greater than the scheduled value of $220,000.

5.      Sisu has also offered to close with cash within 15 days of the Court's order vs the 30 days offered by Recycled.

6.      Sisu has offered a $2,500 deposit three days after contract acceptance guaranteeing its commitment to the sale. Recycled has offered a $500 deposit.

7.      For all the reasons stated by Trustee, a hearing or auction is not necessary or requested. It defies logic to require further legal action to accept a better arrangement for creditors and debtor when one is not required for the inferior offer. Sisu incorporates herein by reference Trustee's legal analysis justifying sale including suspension of Federal Bankruptcy Rule 6004(h).

1

8.      Sisu has attached a signed contract for Trustee to execute.  This contains all the previsions provided by Recycled plus the additional protection and benefits identified herein. (Exhibit B)

9.      Sisu has tied up its funds for over six weeks.  It has limited interest in further lost opportunity cost created by additional delays and additional legal costs associated with a hearing and/or auction.  Sisu will guarantee its offer to allow time for the Trustee and or Court to accept its offer.  After that it will have to re-assess whether further participation in this purchase is warranted.

10.     Conclusion:  Sisu requests the Trustee stipulate to the sale to Sisu avoiding the necessity of wasted Court time, further unnecessary delays, and increased costs to all parties.  In the alternative Sisu prays the Court order the property to be sold to Sisu as the high bidder with cash at closing in 15 days, as defined in the attached contract, from the date of the order.

Dated:  June 16, 2014

                                    Respectfully Submitted
                                    By:     /s/ Edward C. Gassman
                                            Edward C. Gassman, #22533
                                            Gassman Law Firm LLC
                                            P. O. Box 2631
                                            Loveland, CO  80539
                                            Tel:  970-227-5451
                                            Fax:  970-203-1659
                                            Email:  lawfirm@gassman.us

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2014, a true and correct copy of the foregoing **OBJECTION TO TRUSTEE'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY TO LOW BIDDER RECYCLED PROPERTIES LLC LOT 16, BLOCK 1, DELLWOOD HEIGHTS SUBDIVISION, COUNTY OF LARIMER, FORT COLLINS, COLORADO KNOWN AS 2416 HAWTHORNE COURT,** the notice, and proposed order was served by mail by placing the same, postage pre-paid, in the United States mail, addressed as follows:

United States Trustee
999  18th Street, Suite 1551
Denver, CO  80202

Robert Joseph Intlekofer
4625 E. County Road 54
Fort Collins, CO  80524

Aronowitz & Mecklenburg, LLP
Attn: Bankruptcy Correspondence
1199 Bannock Street
Denver, CO  80204

Melinda K. Fisher,
Office of Chief Counsel, IRS
600  17th Street, Suite 300N
Denver, CO  80202

Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Ave. NW, Ste 4400
Washington, DC  20530-0001

Internal Revenue Service
c/o John F. Walsh, United States Attorney
District of Colorado
Attention:  Civil Process Clerk
1225 17th Street, Suite 700
Denver, CO  80202

Daniel A. Hepner, Trustee
1660 Lincoln Street, Suite 2200
Denver, CO  80264

Richard D. Clark
P. O. Box 396
Timnath, CO  80547

GE Capital Retail Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL  33131-1605

Heather L. Deere, Esq.
355 Union Blvd., Suite 250
Lakewood, CO  80228

Internal Revenue Service
P. O. Box 7346
Philadelphia, PA  19101-7346

Internal Revenue Service Insolvency Unit
1999 Broadway
MS 5012 DEN
Denver, CO  80202-3025

CACH, LLC
Attention:  President
4340 S. Monaco Street, Unit 2
Denver, CO  80237-3408

Jodi A. Lofstedt, Trustee
950 Spruce Street, Suite 1C
Louisville, CO  80027

Joseph G. Rosania
950 Spruce Street, Suite 1C
Louisville, CO  80027

*/s/  Ann Gassman*
Ann Gassman, Legal Assistant

# GASSMAN LAW FIRM LLC

Edward C. Gassman
Attorney and Counselor at Law

P. O. Box 2631
Loveland, CO 80539

Phone (970) 227-5451
Fax (970) 203-1659

lawfirm@gassman.us

April 28, 2014
*Via Email*
joe@crlpc.com

Joseph G. Rosania, Esq.
Connolly, Rosania, & Lofstedt, P.C.
950 Spruce Street, Suite 1C
Louisville, CO 80027
Tel: 303.661.9292
Fax: 303.661.9555

Subject:        Overbid (Intlekofer: Case No. 14-11530-HRT)

Dear Joe,

Please accept this letter as a formal overbid for the properties below and include with your motion for sale to the court. Also listed below is the bid price and buyer's name.

All conditions of present contract are accepted, hence the only change is the increase in offer price.

Properties and bid price:

| | |
|---|---|
| 1204 Hays Street, Fort Collins, Colorado | $193,500.00 |
| 2416 Hawthorne Court, Fort Collins, Colorado | $239,500.00 |

Buyer: Sisu Investments LP, a Colorado Limited Partnership, by Michael Vogel, manager of the general partner.

If you have any questions, please feel free to contact me.

Sincerely,

Ed Gassman

EXHIBIT A

**David Lund**
**PO Box 2165**
**Fort Collins, CO 80522**
Phone: (970)372-1576 Fax: (970)292-6116

1  | The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission.
2  | (CBS1-8-13) (Mandatory 1-14)
3
4  **THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR**
5  **OTHER COUNSEL BEFORE SIGNING.**
6
7  # CONTRACT TO BUY AND SELL REAL ESTATE
8  # (RESIDENTIAL)
9
10 Date: *June 10, 2014*

11 | **AGREEMENT** |

12 **1.   AGREEMENT.** Buyer, identified in § 2.1, agrees to buy, and Seller, identified in § 2.3, agrees to sell, the Property
13 described below on the terms and conditions set forth in this contract (Contract).

14 **2.   PARTIES AND PROPERTY.**
15    **2.1.   Buyer.** Buyer. *Sisu Investments, L P*,
16 will take title to the Property described below as ☐ **Joint Tenants** ☐ **Tenants In Common** ☒ **Other** *Severalty*.
17    **2.2.   Assignability and Inurement.** This Contract ☐ **Is** ☒ **Is Not** assignable by Buyer without Seller's prior written
18 consent. Except as so restricted, this Contract inures to the benefit of and is binding upon the heirs, personal representatives,
19 successors and assigns of the parties.
20    **2.3.   Seller.** Seller, *The Estate of Intlekofer, Joli A. Lofstedt, Trustee*, is
21 the current owner of the Property described below.
22    **2.4.   Property.** The Property is the following legally described real estate in the County of *Larimer*, Colorado:
23 *Lot 16, Block 1, Dellwood Heights Subdivision, County of Larimer, Colorado*
24
25
26
27
28 known as No. _*2416 Hawthorne*_____*Fort Collins*____*Colorado*____*80524*___,
29                 Street Address                        City                    State            Zip
30 together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of
31 Seller in vacated streets and alleys adjacent thereto, except as herein excluded (Property).

32
33    **2.5.   Inclusions.** The Purchase Price includes the following items (Inclusions):
34       **2.5.1.   Fixtures.** If attached to the Property on the date of this Contract, the following items are included unless
35 excluded under **Exclusions** (§ 2.6): lighting, heating, plumbing, ventilating and air conditioning fixtures, TV antennas, inside
36 telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems,
37 built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers
38 including *N/A* remote controls.
39 **Other Fixtures:** *N/A*
40
41
42
43 If any fixtures are attached to the Property after the date of this Contract, such additional fixtures are also included in the Purchase
44 Price.
45       **2.5.2.   Personal Property.** If on the Property, whether attached or not, on the date of this Contract, the following
46 items are included unless excluded under **Exclusions** (§ 2.6): storm windows, storm doors, window and porch shades, awnings,
47 blinds, screens, window coverings, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves,

48  storage sheds and all keys. If checked, the following are included: ☐ **Water Softeners** ☒ **Smoke/Fire Detectors** ☒ **Carbon**
49  **Monoxide Alarms** ☐ **Security Systems** ☐ **Satellite Systems** (including satellite dishes).
50  **Other Personal Property:** *N/A*
51
52
53
54        The Personal Property to be conveyed at Closing must be conveyed by Seller free and clear of all taxes (except
55  personal property taxes for the year of Closing), liens and encumbrances, except *N/A*.
56  Conveyance will be by bill of sale or other applicable legal instrument.
57        **2.5.3.  Parking and Storage Facilities.** ☐ **Use Only** ☐ **Ownership** of the following parking facilities:
58  *N/A*; and ☐ **Use Only** ☐ **Ownership** of the following storage facilities: *N/A*.
59        **2.6.  Exclusions.** The following items are excluded (Exclusions):
60  *All Personal Property*
61
62        **2.7.  Water Rights, Well Rights, Water and Sewer Taps.**
63  ☐        **2.7.1.  Deeded Water Rights.** The following legally described water rights:
64  *N/A*
65
66        Any deeded water rights will be conveyed by a good and sufficient *N/A* deed at Closing.
67  ☐        **2.7.2.  Other Rights Relating to Water.** The following rights relating to water not included in §§2.7.1, 2.7.3,
68  2.7.4 and 2.7.5, will be transferred to Buyer at Closing:
69  *N/A*
70
71  ☐        **2.7.3.  Well Rights.** Seller agrees to supply required information to Buyer about the well. Buyer understands that
72  if the well to be transferred is a "Small Capacity Well" or a "Domestic Exempt Water Well" used for ordinary household
73  purposes, Buyer must, prior to or at Closing, complete a Change in Ownership form for the well. If an existing well has not been
74  registered with the Colorado Division of Water Resources in the Department of Natural Resources (Division), Buyer must
75  complete a registration of existing well form for the well and pay the cost of registration. If no person will be providing a closing
76  service in connection with the transaction, Buyer must file the form with the Division within sixty days after Closing. The Well
77  Permit # is *N/A* .
78  ☐        **2.7.4.  Water Stock Certificates.** The water stock certificates to be transferred at Closing are as follows:
79  *N/A*
80
81
82        **2.7.5.  Water and Sewer Taps. Note: Buyer is advised to obtain, from the provider, written confirmation of**
83  **the amount remaining to be paid, if any, time and other restrictions for transfer and use of the taps.**
84        **2.7.6.  Conveyance.** If Buyer is to receive any rights to water pursuant to § 2.7.2 (Other Rights Relating to Water),
85  § 2.7.3 (Well Rights), or § 2.7.4 (Water Stock Certificates), Seller agrees to convey such rights to Buyer by executing the
86  applicable legal instrument at Closing.

87  **3.  DATES AND DEADLINES.**

| Item No. | Reference | Event | Date or Deadline |
|---|---|---|---|
| 1 | § 4.3 | Alternative Earnest Money Deadline | *MEC + plus 3 days* |
| | | **Title** | |
| 2 | § 8.1 | Record Title Deadline | *N/A* |
| 3 | § 8.2 | Record Title Objection Deadline | *N/A* |
| 4 | § 8.3 | Off-Record Title Deadline | *N/A* |
| 5 | § 8.3 | Off-Record Title Objection Deadline | *N/A* |
| 6 | § 8.4 | Title Resolution Deadline | *N/A* |
| 7 | § 8.6 | Right of First Refusal Deadline | *N/A* |
| | | **Owners' Association** | |
| 8 | § 7.3 | Association Documents Deadline | *N/A* |
| 9 | § 7.4 | Association Documents Objection Deadline | *N/A* |
| | | **Seller's Property Disclosure** | |
| 10 | § 10.1 | Seller's Property Disclosure Deadline | *N/A* |

Buyer initials _____        Seller initials _____

| | | Loan and Credit | |
|---|---|---|---|
| 11 | § 5.1 | Loan Application Deadline | *N/A* |
| 12 | § 5.2 | Loan Objection Deadline | *N/A* |
| 13 | § 5.3 | Buyer's Credit Information Deadline | *N/A* |
| 14 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | *N/A* |
| 15 | § 5.4 | Existing Loan Documents Deadline | *N/A* |
| 16 | § 5.4 | Existing Loan Documents Objection Deadline | *N/A* |
| 17 | § 5.4 | Loan Transfer Approval Deadline | *N/A* |
| 18 | § 4.7 | Seller or Private Financing Deadline | *N/A* |
| | | **Appraisal** | |
| 19 | § 6.2 | Appraisal Deadline | *N/A* |
| 20 | § 6.2 | Appraisal Objection Deadline | *N/A* |
| | | **Survey** | |
| 21 | § 9.1 | Current Survey Deadline | *N/A* |
| 22 | § 9.2 | Current Survey Objection Deadline | *N/A* |
| 23 | § 9.3 | Current Survey Resolution Deadline | *N/A* |
| | | **Inspection and Due Diligence** | |
| 24 | § 10.2 | Inspection Objection Deadline | *N/A* |
| 25 | § 10.3 | Inspection Resolution Deadline | *N/A* |
| 26 | § 10.5 | Property Insurance Objection Deadline | *N/A* |
| 27 | § 10.6 | Due Diligence Documents Delivery Deadline | *N/A* |
| 28 | § 10.6 | Due Diligence Documents Objection Deadline | *N/A* |
| 29 | § 10.6 | Due Diligence Documents Resolution Deadline | *N/A* |
| 30 | § 10.7 | Conditional Sale Deadline | *N/A* |
| | | **Closing and Possession** | |
| 31 | § 12.3 | **Closing Date** | *Court Approval + 15 days* |
| 32 | § 17 | Possession Date | *At Closing* |
| 33 | § 17 | Possession Time | *At Closing* |
| 34 | § 28 | **Acceptance Deadline Date** | |
| 35 | § 28 | **Acceptance Deadline Time** | |
| | | | |
| | | | |

88  **Note:** If **FHA** or **VA** loan boxes are checked in § 4.5.3 (Loan Limitations), the **Appraisal Deadline** (§ 3) does <u>**Not**</u> apply to **FHA**
89  insured or **VA** guaranteed loans.

90  **3.1.  Applicability of Terms.** Any box checked in this Contract means the corresponding provision applies. Any box,
91  blank or line in this Contract left blank or completed with the abbreviation "N/A", or the word "Deleted" means such provision,
92  including any deadline, is not applicable and the corresponding provision of this Contract to which reference is made is deleted.

93  The abbreviation "MEC" (mutual execution of this Contract) means the date upon which both parties have signed this Contract.
94
95  **4.  PURCHASE PRICE AND TERMS.**
96  **4.1.  Price and Terms.** The Purchase Price set forth below is payable in U.S. Dollars by Buyer as follows:

Buyer initials _____ _____  Seller initials _____ _____

| Item No. | Reference | Item | Amount | | Amount | |
|----------|-----------|------|--------|--|--------|--|
| 1 | § 4.1 | Purchase Price | $ | 239,500.00 | | |
| 2 | § 4.3 | Earnest Money | | | $ | 2,500.00 |
| 3 | § 4.5 | New Loan | | | $ | 0.00 |
| 4 | § 4.6 | Assumption Balance | | | $ | N/A |
| 5 | § 4.7 | Private Financing | | | $ | N/A |
| 6 | § 4.7 | Seller Financing | | | $ | N/A |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | § 4.4 | Cash at Closing | | | $ | 237,000.00 |
| 10 | | **TOTAL** | $ | 239,500.00 | $ | 239,500.00 |

97      **4.2.  Seller Concession.** Seller, at Closing, will credit, as directed by Buyer, an amount of $ *0.00* to assist

98 with any or all of the following: Buyer's closing costs, loan discount points, loan origination fees, prepaid items (including any

99 amounts that Seller agrees to pay because Buyer is not allowed to pay due to FHA, CHFA, VA, etc.), and any other fee, cost,

100 charge, expense or expenditure related to Buyer's New Loan or other allowable Seller concession (collectively, Seller

101 Concession). Seller Concession is in addition to any sum Seller has agreed to pay or credit Buyer elsewhere in this Contract. Seller

102 Concession will be reduced to the extent it exceeds the aggregate of what is allowed by Buyer's lender as set forth in the Closing

103 Statement, Closing Disclosure or HUD-1, at Closing.

104      **4.3.  Earnest Money.** The Earnest Money set forth in this section, in the form of *check*, will be

105 payable to and held by *Joli A. Lofstedt, Chapter 7 Trustee* (Earnest Money Holder), in its trust account, on behalf of

106 both Seller and Buyer. The Earnest Money deposit must be tendered, by Buyer, with this Contract unless the parties mutually

107 agree to an **Alternative Earnest Money Deadline** (§ 3) for its payment. The parties authorize delivery of the Earnest Money

108 deposit to the company conducting the Closing (Closing Company), if any, at or before Closing. In the event Earnest Money

109 Holder has agreed to have interest on Earnest Money deposits transferred to a fund established for the purpose of providing

110 affordable housing to Colorado residents, Seller and Buyer acknowledge and agree that any interest accruing on the Earnest

111 Money deposited with the Earnest Money Holder in this transaction will be transferred to such fund.

112      **4.3.1.  Alternative Earnest Money Deadline.** The deadline for delivering the Earnest Money, if other than at the

113 time of tender of this Contract, is as set forth as the **Alternative Earnest Money Deadline** (§ 3).

114      **4.3.2.  Return of Earnest Money.** If Buyer has a Right to Terminate and timely terminates, Buyer is entitled to

115 the return of Earnest Money as provided in this Contract. If this Contract is terminated as set forth in § 25 and, except as provided

116 in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate, Seller agrees to execute

117 and return to Buyer or Broker working with Buyer, written mutual instructions (e.g., Earnest Money Release form), within three

118 days of Seller's receipt of such form.

119      **4.4.  Form of Funds; Time of Payment; Available Funds.**

120      **4.4.1.  Good Funds.** All amounts payable by the parties at Closing, including any loan proceeds, Cash at Closing

121 and closing costs, must be in funds that comply with all applicable Colorado laws, including electronic transfer funds, certified

122 check, savings and loan teller's check and cashier's check (Good Funds).

123      **4.4.2.  Time of Payment; Available Funds.** All funds, including the Purchase Price to be paid by Buyer, must be

124 paid before or at Closing or as otherwise agreed in writing between the parties to allow disbursement by Closing Company at

125 Closing **OR SUCH NONPAYING PARTY WILL BE IN DEFAULT.** Buyer represents that Buyer, as of the date of this

126 Contract, ☒ **Does** ☐ **Does Not** have funds that are immediately verifiable and available in an amount not less than the amount

127 stated as Cash at Closing in § 4.1.

128      **4.5.  New Loan.** *OMITTED AS INAPPLICABLE.*

140      **4.6.  Assumption.** *OMITTED AS INAPPLICABLE.*

153      **4.7.  Seller or Private Financing.** *OMITTED AS INAPPLICABLE.*

171      **TRANSACTION PROVISIONS**

172  **5.  FINANCING CONDITIONS AND OBLIGATIONS.**

173      **5.1.  Loan Application.** If Buyer is to pay all or part of the Purchase Price by obtaining one or more new loans (New

174 Loan), or if an existing loan is not to be released at Closing, Buyer, if required by such lender, must make an application verifiable

175 by such lender, on or before **Loan Application Deadline** (§ 3) and exercise reasonable efforts to obtain such loan or approval.

Buyer initials _____            Seller initials _____

176    **5.2.   Loan Objection.** If Buyer is to pay all or part of the Purchase Price with a New Loan, this Contract is conditional
177 upon Buyer determining, in Buyer's sole subjective discretion, whether the New Loan is satisfactory to Buyer, including its
178 availability, payments, interest rate, terms, conditions, and cost of such New Loan. This condition is for the sole benefit of Buyer.
179 Buyer has the Right to Terminate under § 25.1, on or before **Loan Objection Deadline** (§ 3), if the New Loan is not satisfactory to
180 Buyer, in Buyer's sole subjective discretion. **IF SELLER IS NOT IN DEFAULT AND DOES NOT TIMELY RECEIVE**
181 **BUYER'S WRITTEN NOTICE TO TERMINATE, BUYER'S EARNEST MONEY WILL BE NONREFUNDABLE,** except
182 as otherwise provided in this Contract (e.g., Appraisal, Title, Survey).

183    **5.3.   Credit Information.** If an existing loan is not to be released at Closing, this Contract is conditional (for the sole
184 benefit of Seller) upon Seller's approval of Buyer's financial ability and creditworthiness, which approval will be at Seller's sole
185 subjective discretion. Accordingly: (1) Buyer must supply to Seller by **Buyer's Credit Information Deadline** (§ 3), at Buyer's
186 expense, information and documents (including a current credit report) concerning Buyer's financial, employment and credit
187 condition; (2) Buyer consents that Seller may verify Buyer's financial ability and creditworthiness; (3) any such information
188 and documents received by Seller must be held by Seller in confidence, and not released to others except to protect Seller's interest
189 in this transaction. If the Cash at Closing is less than as set forth in § 4.1 of this Contract, Seller has the Right to Terminate under
190 § 25.1, on or before Closing. If Seller disapproves of Buyer's financial ability or creditworthiness, in Seller's sole subjective
191 discretion, Seller has the Right to Terminate under § 25.1, on or before **Disapproval of Buyer's Credit Information Deadline**
192 (§ 3).

193    **5.4.   Existing Loan Review.** If an existing loan is not to be released at Closing, Seller must deliver copies of the loan
194 documents (including note, deed of trust, and any modifications) to Buyer by **Existing Loan Documents Deadline** (§ 3). For the
195 sole benefit of Buyer, this Contract is conditional upon Buyer's review and approval of the provisions of such loan documents.
196 Buyer has the Right to Terminate under § 25.1, on or before **Existing Loan Documents Objection Deadline** (§ 3), based on any
197 unsatisfactory provision of such loan documents, in Buyer's sole subjective discretion. If the lender's approval of a transfer of the
198 Property is required, this Contract is conditional upon Buyer's obtaining such approval without change in the terms of such loan,
199 except as set forth in § 4.6. If lender's approval is not obtained by **Loan Transfer Approval Deadline** (§ 3), this Contract will
200 terminate on such deadline. Seller has the Right to Terminate under § 25.1, on or before Closing, in Seller's sole subjective
201 discretion, if Seller is to be released from liability under such existing loan and Buyer does not obtain such compliance as set forth
202 in § 4.6.

203 **6.   APPRAISAL PROVISIONS.**

204    **6.1.   Lender Property Requirements.** If the lender imposes any requirements or repairs (Requirements) to be made to
205 the Property (e.g., roof repair, repainting), beyond those matters already agreed to by Seller in this Contract, Seller has the Right to
206 Terminate under § 25.1, (notwithstanding § 10 of this Contract), on or before three days following Seller's receipt of the
207 Requirements, based on any unsatisfactory Requirements, in Seller's sole subjective discretion. Seller's Right to Terminate in this
208 § 6.1 does not apply if, on or before any termination by Seller pursuant to this § 6.1: (1) the parties enter into a written agreement
209 regarding the Requirements; or (2) the Requirements have been completed; or (3) the satisfaction of the Requirements is waived in
210 writing by Buyer.

211    **6.2.   Appraisal Condition.** The applicable Appraisal provision set forth below applies to the respective loan type set
212 forth in § 4.5.3, or if a cash transaction (i.e. no financing), § 6.2.1 applies.

213    **6.2.1.   Conventional/Other.** Buyer has the sole option and election to terminate this Contract if the Property's
214 valuation, determined by an appraiser engaged on behalf of *N/A*, is less than the Purchase Price. The
215 appraisal must be received by Buyer or Buyer's lender on or before **Appraisal Deadline** (§ 3). Buyer has the Right to Terminate
216 under § 25.1, on or before **Appraisal Objection Deadline** (§ 3), if the Property's valuation is less than the Purchase Price and
217 Seller's receipt of either a copy of such appraisal or written notice from lender that confirms the Property's valuation is less than
218 the Purchase Price. This § 6.2.1 is for the sole benefit of Buyer.

219    **6.2.2.   FHA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the Purchaser
220 (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of
221 Earnest Money deposits or otherwise unless the Purchaser (Buyer) has been given, in accordance with HUD/FHA or VA
222 requirements, a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct
223 Endorsement lender, setting forth the appraised value of the Property of not less than $ *N/A* . The Purchaser (Buyer)
224 shall have the privilege and option of proceeding with the consummation of this Contract without regard to the amount of the
225 appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and
226 Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The Purchaser (Buyer) should
227 satisfy himself/herself that the price and condition of the Property are acceptable.

228    **6.2.3.   VA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the purchaser (Buyer)
229 shall not incur any penalty by forfeiture of Earnest Money or otherwise or be obligated to complete the purchase of the Property
230 described herein, if the Contract Purchase Price or cost exceeds the reasonable value of the Property established by the Department

231 of Veterans Affairs. The purchaser (Buyer) shall, however, have the privilege and option of proceeding with the consummation of
232 this Contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs.

233     **6.3.**   **Cost of Appraisal.** Cost of any appraisal to be obtained after the date of this Contract must be timely paid by
234 ☒ **Buyer** ☐ **Seller.** The cost of the appraisal may include any or all fees paid to the appraiser, appraisal management
235 company, lender's agent or all three.

236

237 **7.**   **OWNERS' ASSOCIATION. This Section is applicable if the Property is located within a Common Interest**
238 **Community and subject to such declaration.**

239     **7.1.**   **Owners' Association Documents.** Owners' Association Documents (Association Documents) consist of the
240 following:

241         **7.1.1.**   All Owners' Association declarations, articles of incorporation, bylaws, articles of organization, operating
242 agreements, rules and regulations, party wall agreements;

243         **7.1.2.**   Minutes of most recent annual owners' meeting;

244         **7.1.3.**   Minutes of any directors' or managers' meetings during the six-month period immediately preceding the
245 date of this Contract. If none of the preceding minutes exist, then the most recent minutes, if any (§§ 7.1.1, 7.1.2 and 7.1.3,
246 collectively, Governing Documents); and

247         **7.1.4.**   The most recent financial documents which consist of: (1) annual and most recent balance sheet, (2) annual
248 and most recent income and expenditures statement, (3) annual budget, (4) reserve study, and (5) notice of unpaid assessments, if
249 any (collectively, Financial Documents).

250     **7.2.**   **Common Interest Community Disclosure. THE PROPERTY IS LOCATED WITHIN A COMMON**
251 **INTEREST COMMUNITY AND IS SUBJECT TO THE DECLARATION FOR SUCH COMMUNITY. THE OWNER**
252 **OF THE PROPERTY WILL BE REQUIRED TO BE A MEMBER OF THE OWNERS' ASSOCIATION FOR THE**
253 **COMMUNITY AND WILL BE SUBJECT TO THE BYLAWS AND RULES AND REGULATIONS OF THE**
254 **ASSOCIATION. THE DECLARATION, BYLAWS, AND RULES AND REGULATIONS WILL IMPOSE FINANCIAL**
255 **OBLIGATIONS UPON THE OWNER OF THE PROPERTY, INCLUDING AN OBLIGATION TO PAY**
256 **ASSESSMENTS OF THE ASSOCIATION. IF THE OWNER DOES NOT PAY THESE ASSESSMENTS, THE**
257 **ASSOCIATION COULD PLACE A LIEN ON THE PROPERTY AND POSSIBLY SELL IT TO PAY THE DEBT. THE**
258 **DECLARATION, BYLAWS, AND RULES AND REGULATIONS OF THE COMMUNITY MAY PROHIBIT THE**
259 **OWNER FROM MAKING CHANGES TO THE PROPERTY WITHOUT AN ARCHITECTURAL REVIEW BY THE**
260 **ASSOCIATION (OR A COMMITTEE OF THE ASSOCIATION) AND THE APPROVAL OF THE ASSOCIATION.**
261 **PURCHASERS OF PROPERTY WITHIN THE COMMON INTEREST COMMUNITY SHOULD INVESTIGATE THE**
262 **FINANCIAL OBLIGATIONS OF MEMBERS OF THE ASSOCIATION. PURCHASERS SHOULD CAREFULLY**
263 **READ THE DECLARATION FOR THE COMMUNITY AND THE BYLAWS AND RULES AND REGULATIONS OF**
264 **THE ASSOCIATION.**

265     **7.3.**   **Association Documents to Buyer.**

266 ☐     **7.3.1.**   **Seller to Provide Association Documents.** Seller will cause the Association Documents to be provided to
267 Buyer, at Seller's expense, on or before **Association Documents Deadline** (§ 3).

268 ☐     **7.3.2.**   **Seller Authorizes Association.** Seller authorizes the Association to provide the Association Documents to
269 Buyer, at Seller's expense.

270         **7.3.3.**   **Seller's Obligation.** Seller's obligation to provide the Association Documents is fulfilled upon Buyer's
271 receipt of the Association Documents, regardless of who provides such documents.

272 **Note:** If neither box in this § 7.3 is checked, the provisions of § 7.3.1 apply.

273     **7.4.**   **Conditional on Buyer's Review.** Buyer has the right to review the Association Documents. Buyer has the Right to
274 Terminate under § 25.1, on or before **Association Documents Objection Deadline** (§ 3), based on any unsatisfactory provision in
275 any of the Association Documents, in Buyer's sole subjective discretion. Should Buyer receive the Association Documents after
276 **Association Documents Deadline** (§ 3), Buyer, at Buyer's option, has the Right to Terminate under § 25.1 by Buyer's Notice to
277 Terminate received by Seller on or before ten days after Buyer's receipt of the Association Documents. If Buyer does not receive
278 the Association Documents, or if Buyer's Notice to Terminate would otherwise be required to be received by Seller after **Closing**
279 **Date** (§ 3), Buyer's Notice to Terminate must be received by Seller on or before Closing. If Seller does not receive Buyer's Notice
280 to Terminate within such time, Buyer accepts the provisions of the Association Documents as satisfactory, and Buyer waives any
281 Right to Terminate under this provision, notwithstanding the provisions of § 8.6 (Right of First Refusal or Contract Approval).

282 **8.**   **TITLE INSURANCE, RECORD TITLE AND OFF-RECORD TITLE.**
283     **8.1.**   **Evidence of Record Title.**

284 ☐     **8.1.1.**   **Seller Selects Title Insurance Company.** If this box is checked, Seller will select the title insurance
285 company to furnish the owner's title insurance policy at Seller's expense. On or before **Record Title Deadline** (§ 3), Seller must
286 furnish to Buyer, a current commitment for owner's title insurance policy (Title Commitment), in an amount equal to the

---

287  Purchase Price, or if this box is checked, ☐ an **Abstract of Title** certified to a current date. Seller will cause the title insurance
288  policy to be issued and delivered to Buyer as soon as practicable at or after Closing.
289  ☒          **8.1.2.   Buyer Selects Title Insurance Company**. If this box is checked, Buyer will select the title insurance
290  company to furnish the owner's title insurance policy at Buyer's expense. On or before **Record Title Deadline** (§ 3), Buyer must
291  furnish to Seller, a current commitment for owner's title insurance policy (Title Commitment), in an amount equal to the Purchase
292  Price.
293  If neither box in § 8.1.1 or § 8.1.2 is checked, § 8.1.1 applies.

294          **8.1.3.   Owner's Extended Coverage (OEC).** The Title Commitment ☐ **Will** ☒ **Will Not** commit to delete or
295  insure over the standard exceptions which relate to: (1) parties in possession, (2) unrecorded easements, (3) survey matters, (4)
296  unrecorded mechanics' liens, (5) gap period (effective date of commitment to date deed is recorded), and (6) unpaid taxes,
297  assessments and unredeemed tax sales prior to the year of Closing (OEC). If the title insurance company agrees to provide an
298  endorsement for OEC, any additional premium expense to obtain an endorsement for OEC will be paid by ☐ **Buyer** ☐ **Seller**
299  ☒ **One-Half by Buyer and One-Half by Seller** ☐ **Other** _____.
300  **Note:** The title insurance company may not agree to delete or insure over any or all of the standard exceptions.
301          **8.1.4.   Title Documents.** Title Documents consist of the following: (1) copies of any plats, declarations,
302  covenants, conditions and restrictions burdening the Property, and (2) copies of any other documents (or, if illegible, summaries of
303  such documents) listed in the schedule of exceptions (Exceptions) in the Title Commitment furnished to Buyer (collectively, Title
304  Documents).
305          **8.1.5.   Copies of Title Documents.** Buyer must receive, on or before **Record Title Deadline** (§ 3) copies of all
306  Title Documents. This requirement pertains only to documents as shown of record in the office of the clerk and recorder in the
307  county where the Property is located. The cost of furnishing copies of the documents required in this Section will be at the expense
308  of the party or parties obligated to pay for the owner's title insurance policy.
309          **8.1.6.   Existing Abstracts of Title.** Seller must deliver to Buyer copies of any abstracts of title covering all or any
310  portion of the Property (Abstract of Title) in Seller's possession on or before **Record Title Deadline** (§ 3).
311  **8.2.   Record Title.** Buyer has the right to review and object to the Abstract of Title or Title Commitment and any of the
312  Title Documents as set forth in § 8.4 (Right to Object to Title, Resolution) on or before **Record Title Objection Deadline** (§ 3).
313  Buyer's objection may be based on any unsatisfactory form or content of Title Commitment or Abstract of Title, notwithstanding
314  § 13, or any other unsatisfactory title condition, in Buyer's sole subjective discretion. If the Abstract of Title, Title Commitment or
315  Title Documents are not received by Buyer on or before the **Record Title Deadline** (§ 3), or if there is an endorsement to the Title
316  Commitment that adds a new Exception to title, a copy of the new Exception to title and the modified Title Commitment will be
317  delivered to Buyer. Buyer has until the earlier of Closing or ten days after receipt of such documents by Buyer to review and object
318  to: (1) any required Title Document not timely received by Buyer, (2) any change to the Abstract of Title, Title Commitment or
319  Title Documents, or (3) any endorsement to the Title Commitment. If Seller receives Buyer's Notice to Terminate or Notice of
320  Title Objection, pursuant to this § 8.2 (Record Title), any title objection by Buyer is governed by the provisions set forth in § 8.4
321  (Right to Object to Title, Resolution). If Seller has fulfilled all Seller's obligations, if any, to deliver to Buyer all documents
322  required by § 8.1 (Evidence of Record Title) and Seller does not receive Buyer's Notice to Terminate or Notice of Title Objection
323  by the applicable deadline specified above, Buyer accepts the condition of title as disclosed by the Abstract of Title, Title
324  Commitment and Title Documents as satisfactory.
325  **8.3.   Off-Record Title.** Seller must deliver to Buyer, on or before **Off-Record Title Deadline** (§ 3), true copies of all
326  existing surveys in Seller's possession pertaining to the Property and must disclose to Buyer all easements, liens (including,
327  without limitation, governmental improvements approved, but not yet installed) or other title matters (including, without
328  limitation, rights of first refusal and options) not shown by public records, of which Seller has actual knowledge (Off-Record
329  Matters). Buyer has the right to inspect the Property to investigate if any third party has any right in the Property not shown by
330  public records (e.g., unrecorded easement, boundary line discrepancy or water rights). Buyer's Notice to Terminate or Notice of
331  Title Objection of any unsatisfactory condition (whether disclosed by Seller or revealed by such inspection, notwithstanding § 8.2
332  and § 13), in Buyer's sole subjective discretion, must be received by Seller on or before **Off-Record Title Objection Deadline**
333  (§ 3). If an Off-Record Matter is received by Buyer after the **Off-Record Title Deadline** (§ 3), Buyer has until the earlier of
334  Closing or ten days after receipt by Buyer to review and object to such Off-Record Matter. If Seller receives Buyer's Notice to
335  Terminate or Notice of Title Objection pursuant to this § 8.3 (Off-Record Title), any title objection by Buyer and this Contract are
336  governed by the provisions set forth in § 8.4 (Right to Object to Title, Resolution). If Seller does not receive Buyer's Notice to
337  Terminate or Notice of Title Objection by the applicable deadline specified above, Buyer accepts title subject to such rights, if any,
338  of third parties of which Buyer has actual knowledge.
339  **8.4.   Right to Object to Title, Resolution.** Buyer's right to object to any title matters includes, but is not limited to those
340  matters set forth in §§ 8.2 (Record Title), 8.3 (Off-Record Title) and 13 (Transfer of Title), in Buyer's sole subjective discretion. If
341  Buyer objects to any title matter, on or before the applicable deadline, Buyer has the following options:
342          **8.4.1.   Title Objection, Resolution.** If Seller receives Buyer's written notice objecting to any title matter (Notice

---

343 of Title Objection), on or before the applicable deadline, and if Buyer and Seller have not agreed to a written settlement thereof on
344 or before **Title Resolution Deadline** (§ 3), this Contract will terminate on the expiration of **Title Resolution Deadline** (§ 3),
345 unless Seller receives Buyer's written withdrawal of Buyer's Notice of Title Objection (i.e., Buyer's written notice to waive
346 objection to such items and waives the Right to Terminate for that reason), on or before expiration of **Title Resolution Deadline**
347 (§ 3). If either the Record Title Deadline or the Off-Record Title Deadline, or both, are extended to the earlier of Closing or ten
348 days after receipt of the applicable documents by Buyer, pursuant to § 8.2 (Record Title) or § 8.3 (Off-Record Title), the Title
349 Resolution Deadline also will be automatically extended to the earlier of Closing or fifteen days after Buyer's receipt of the
350 applicable documents; or

351         **8.4.2.   Title Objection, Right to Terminate.** Buyer may exercise the Right to Terminate under § 25.1, on or
352 before the applicable deadline, based on any unsatisfactory title matter, in Buyer's sole subjective discretion.

353       **8.5.   Special Taxing Districts. SPECIAL TAXING DISTRICTS MAY BE SUBJECT TO GENERAL OBLIGATION**
354 **INDEBTEDNESS THAT IS PAID BY REVENUES PRODUCED FROM ANNUAL TAX LEVIES ON THE TAXABLE**
355 **PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN SUCH DISTRICTS MAY BE PLACED AT RISK**
356 **FOR INCREASED MILL LEVIES AND TAX TO SUPPORT THE SERVICING OF SUCH DEBT WHERE**
357 **CIRCUMSTANCES ARISE RESULTING IN THE INABILITY OF SUCH A DISTRICT TO DISCHARGE SUCH**
358 **INDEBTEDNESS WITHOUT SUCH AN INCREASE IN MILL LEVIES. BUYERS SHOULD INVESTIGATE THE**
359 **SPECIAL TAXING DISTRICTS IN WHICH THE PROPERTY IS LOCATED BY CONTACTING THE COUNTY**
360 **TREASURER, BY REVIEWING THE CERTIFICATE OF TAXES DUE FOR THE PROPERTY, AND BY OBTAINING**
361 **FURTHER INFORMATION FROM THE BOARD OF COUNTY COMMISSIONERS, THE COUNTY CLERK AND**
362 **RECORDER, OR THE COUNTY ASSESSOR.**

363     Buyer has the Right to Terminate under § 25.1, on or before **Off-Record Title Objection Deadline** (§ 3), based on any
364 unsatisfactory effect of the Property being located within a special taxing district, in Buyer's sole subjective discretion.

365       **8.6.   Right of First Refusal or Contract Approval.** If there is a right of first refusal on the Property, or a right to approve
366 this Contract, Seller must promptly submit this Contract according to the terms and conditions of such right. If the holder of the
367 right of first refusal exercises such right or the holder of a right to approve disapproves this Contract, this Contract will terminate.
368 If the right of first refusal is waived explicitly or expires, or the Contract is approved, this Contract will remain in full force and
369 effect. Seller must promptly notify Buyer in writing of the foregoing. If expiration or waiver of the right of first refusal or approval
370 of this Contract has not occurred on or before **Right of First Refusal Deadline** (§ 3), this Contract will then terminate.

371       **8.7.   Title Advisory.** The Title Documents affect the title, ownership and use of the Property and should be reviewed
372 carefully. Additionally, other matters not reflected in the Title Documents may affect the title, ownership and use of the Property,
373 including, without limitation, boundary lines and encroachments, set-back requirements, area, zoning, building code violations,
374 unrecorded easements and claims of easements, leases and other unrecorded agreements, water on or under the Property, and
375 various laws and governmental regulations concerning land use, development and environmental matters. **The surface estate may**
376 **be owned separately from the underlying mineral estate, and transfer of the surface estate does not necessarily include**
377 **transfer of the mineral rights or water rights. Third parties may hold interests in oil, gas, other minerals, geothermal**
378 **energy or water on or under the Property, which interests may give them rights to enter and use the Property.** Such matters,
379 and others, may be excluded from or not covered by the owner's title insurance policy. Buyer is advised to timely consult legal
380 counsel with respect to all such matters as there are strict time limits provided in this Contract [e.g., **Record Title Objection**
381 **Deadline** (§ 3) and **Off-Record Title Objection Deadline** (§ 3)].

382 **9.   CURRENT SURVEY REVIEW.**

383       **9.1.   Current Survey Conditions.** If the box in § 9.1.1 or § 9.1.2 is checked, Buyer, the issuer of the Title Commitment
384 or the provider of the opinion of title if an Abstract of Title, and **N/A** will receive an Improvement Location
385 Certificate, Improvement Survey Plat or other form of survey set forth in § 9.1.2 (collectively, Current Survey), on or before
386 **Current Survey Deadline** (§ 3). The Current Survey will be certified by the surveyor to all those who are to receive the Current
387 Survey.

388   ☐      **9.1.1.   Improvement Location Certificate.** If the box in this § 9.1.1 is checked, ☐ **Seller** ☐ **Buyer** will order
389 or provide, and pay, on or before Closing, the cost of an Improvement Location Certificate.

390   ☐      **9.1.2.   Other Survey.** If the box in this § 9.1.2 is checked, a Current Survey, other than an Improvement Location
391 Certificate, will be an ☐ **Improvement Survey Plat** ☐ **N/A**. The parties agree that payment of the cost of
392 the Current Survey and obligation to order or provide the Current Survey are as follows:
393 **N/A**
394
395

396       **9.2.   Current Survey Objection.** Buyer has the right to review and object to the Current Survey. If the Current Survey is
397 not timely received by Buyer or is unsatisfactory to Buyer, in Buyer's sole subjective discretion, Buyer may, on or before **Current**
398 **Survey Objection Deadline** (§ 3), notwithstanding § 8.3 or § 13:

399      **9.2.1.**    **Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or

400      **9.2.2.**    **Current Survey Objection.** Deliver to Seller a written description of any matter that was to be shown or is
401 shown in the Current Survey that is unsatisfactory and that Buyer requires Seller to correct.

402     **9.3.**    **Current Survey Resolution.** If a Current Survey Objection is received by Seller, on or before **Current Survey**
403 **Objection Deadline** (§ 3), and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Current Survey**
404 **Resolution Deadline** (§ 3), this Contract will terminate on the **Current Survey Resolution Deadline** (§ 3), unless Seller receives
405 Buyer's written withdrawal of the Current Survey Objection before such termination, i.e., on or before expiration of **Current**
406 **Survey Resolution Deadline** (§ 3).

407

408                  **DISCLOSURE, INSPECTION AND DUE DILIGENCE**

409 **10.    PROPERTY DISCLOSURE, INSPECTION, INDEMNITY, INSURABILITY, DUE DILIGENCE, BUYER**
410 **DISCLOSURE AND SOURCE OF WATER.**

411     **10.1.**    **Seller's Property Disclosure.** On or before **Seller's Property Disclosure Deadline** (§ 3), Seller agrees to deliver to
412 Buyer the most current version of the applicable Colorado Real Estate Commission's Seller's Property Disclosure form completed
413 by Seller to Seller's actual knowledge, current as of the date of this Contract.

414     **10.2.**    **Inspection Objection.** Unless otherwise provided in this Contract, Buyer acknowledges that Seller is conveying the
415 Property to Buyer in an "as is" condition, "where is" and "with all faults". Colorado law requires that Seller disclose to Buyer any
416 latent defects actually known by Seller. Disclosure of latent defects must be in writing. Buyer, acting in good faith, has the right to
417 have inspections (by one or more third parties, personally or both) of the Property and Inclusions (Inspection), at Buyer's expense.
418 If (1) the physical condition of the Property, including, but not limited to, the roof, walls, structural integrity of the Property, the
419 electrical, plumbing, HVAC and other mechanical systems of the Property, (2) the physical condition of the Inclusions, (3) service
420 to the Property (including utilities and communication services), systems and components of the Property (e.g. heating and
421 plumbing), (4) any proposed or existing transportation project, road, street or highway, or (5) any other activity, odor or noise
422 (whether on or off the Property) and its effect or expected effect on the Property or its occupants is unsatisfactory, in Buyer's sole
423 subjective discretion, Buyer may, on or before **Inspection Objection Deadline** (§ 3):

424      **10.2.1.**    **Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or

425      **10.2.2.**    **Inspection Objection.** Deliver to Seller a written description of any unsatisfactory physical condition that
426 Buyer requires Seller to correct.

427     **10.3.**    **Inspection Resolution.** If an Inspection Objection is received by Seller, on or before **Inspection Objection**
428 **Deadline** (§ 3), and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Inspection Resolution**
429 **Deadline** (§ 3), this Contract will terminate on **Inspection Resolution Deadline** (§ 3), unless Seller receives Buyer's written
430 withdrawal of the Inspection Objection before such termination, i.e., on or before expiration of **Inspection Resolution Deadline**
431 (§ 3).

432     **10.4.**    **Damage, Liens and Indemnity.** Buyer, except as otherwise provided in this Contract or other written agreement
433 between the parties, is responsible for payment for all inspections, tests, surveys, engineering reports, or other reports performed at
434 Buyer's request (Work) and must pay for any damage that occurs to the Property and Inclusions as a result of such Work. Buyer
435 must not permit claims or liens of any kind against the Property for Work performed on the Property. Buyer agrees to indemnify,
436 protect and hold Seller harmless from and against any liability, damage, cost or expense incurred by Seller and caused by any such
437 Work, claim, or lien. This indemnity includes Seller's right to recover all costs and expenses incurred by Seller to defend against
438 any such liability, damage, cost or expense, or to enforce this section, including Seller's reasonable attorney fees, legal fees and
439 expenses. The provisions of this section survive the termination of this Contract. This § 10.4 does not apply to items performed
440 pursuant to an Inspection Resolution.

441     **10.5.**    **Insurability.** Buyer has the right to review and object to the availability, terms and conditions of and premium for
442 property insurance (Property Insurance). Buyer has the Right to Terminate under § 25.1, on or before **Property Insurance**
443 **Objection Deadline** (§ 3), based on any unsatisfactory provision of the Property Insurance, in Buyer's sole subjective discretion.

444     **10.6.**    **Due Diligence.**

445      **10.6.1.**    **Due Diligence Documents.** If the respective box is checked, Seller agrees to deliver copies of the following
446 documents and information pertaining to the Property (Due Diligence Documents) to Buyer on or before **Due Diligence**
447 **Documents Delivery Deadline** (§ 3):

448 ☐      **10.6.1.1.**     All current leases, including any amendments or other occupancy agreements, pertaining to the
449 Property. Those leases or other occupancy agreements pertaining to the Property that survive Closing are as follows (Leases):
450 *N/A*

451

452 ☐      **10.6.1.2.**     Other documents and information:
453 *N/A*

454
455
456

457         **10.6.2.**   **Due Diligence Documents Review and Objection.** Buyer has the right to review and object to Due
458 Diligence Documents. If the Due Diligence Documents are not supplied to Buyer or are unsatisfactory in Buyer's sole subjective
459 discretion, Buyer may, on or before **Due Diligence Documents Objection Deadline** (§ 3):

460             **10.6.2.1.**   **Notice to Terminate.**  Notify Seller in writing that this Contract is terminated; or
461             **10.6.2.2.**   **Due Diligence Documents Objection.**  Deliver to Seller a written description of any
462 unsatisfactory Due Diligence Documents that Buyer requires Seller to correct.

463         **10.6.3.**   **Due Diligence Documents Resolution.** If a Due Diligence Documents Objection is received by Seller, on or
464 before **Due Diligence Documents Objection Deadline** (§ 3), and if Buyer and Seller have not agreed in writing to a settlement
465 thereof on or before **Due Diligence Documents Resolution Deadline** (§ 3) this Contract will terminate on **Due Diligence**
466 **Documents Resolution Deadline** (§ 3) unless Seller receives Buyer's written withdrawal of the Due Diligence Documents
467 Objection before such termination, i.e., on or before expiration of **Due Diligence Documents Resolution Deadline** (§ 3).

468       **10.7.**   **Conditional Upon Sale of Property.** This Contract is conditional upon the sale and closing of that certain property
469 owned by Buyer and commonly known as **N/A**. Buyer has the Right to Terminate
470 under § 25.1 effective upon Seller's receipt of Buyer's Notice to Terminate on or before **Conditional Sale Deadline** (§ 3) if such
471 property is not sold and closed by such deadline. This § 10.7 is for the sole benefit of Buyer. If Seller does not receive Buyer's
472 Notice to Terminate on or before **Conditional Sale Deadline** (§ 3), Buyer waives any Right to Terminate under this provision.

473       **10.8.**   **Source of Potable Water (Residential Land and Residential Improvements Only).** Buyer ☐ Does ☒ Does Not
474 acknowledge receipt of a copy of Seller's Property Disclosure or Source of Water Addendum disclosing the source of potable water
475 for the Property. Buyer ☐ Does ☒ Does Not acknowledge receipt of a copy of the current well permit. ☐ There is **No Well.**
476 **Note to Buyer: SOME WATER PROVIDERS RELY, TO VARYING DEGREES, ON NONRENEWABLE GROUND**
477 **WATER. YOU MAY WISH TO CONTACT YOUR PROVIDER (OR INVESTIGATE THE DESCRIBED SOURCE) TO**
478 **DETERMINE THE LONG-TERM SUFFICIENCY OF THE PROVIDER'S WATER SUPPLIES.**

479       **10.9.**   **Carbon Monoxide Alarms. Note:** If the improvements on the Property have a fuel-fired heater or appliance, a
480 fireplace, or an attached garage and include one or more rooms lawfully used for sleeping purposes (Bedroom), the parties
481 acknowledge that Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within
482 fifteen feet of the entrance to each Bedroom or in a location as required by the applicable building code.

483       **10.10.**   **Lead-Based Paint.** Unless exempt, if the improvements on the Property include one or more residential dwellings
484 for which a building permit was issued prior to January 1, 1978, this Contract is void unless (1) a completed Lead-Based Paint
485 Disclosure (Sales) form is signed by Seller, the required real estate licensees and Buyer, and (2) Seller receives the completed and
486 fully executed form prior to the time when this Contract is signed by all parties. Buyer acknowledges timely receipt of a completed
487 Lead-Based Paint Disclosure (Sales) form signed by Seller and the real estate licensees.

488       **10.11.**   **Methamphetamine Disclosure.** If Seller knows that methamphetamine was ever manufactured, processed, cooked,
489 disposed of, used or stored at the Property, Seller is required to disclose such fact. No disclosure is required if the Property was
490 remediated in accordance with state standards and other requirements are fulfilled pursuant to § 25-18.5-102, C.R.S. Buyer further
491 acknowledges that Buyer has the right to engage a certified hygienist or industrial hygienist to test whether the Property has ever
492 been used as a methamphetamine laboratory. Buyer has the Right to Terminate under § 25.1, upon Seller's receipt of Buyer's
493 written Notice to Terminate, notwithstanding any other provision of this Contract, based on Buyer's test results that indicate the
494 Property has been contaminated with methamphetamine, but has not been remediated to meet the standards established by rules of
495 the State Board of Health promulgated pursuant to § 25-18.5-102, C.R.S. Buyer must promptly give written notice to Seller of the
496 results of the test.

497 **11.**   **TENANT ESTOPPEL STATEMENTS. [Intentionally Deleted]**
498

499                                   | **CLOSING PROVISIONS** |

500 **12.**   **CLOSING DOCUMENTS, INSTRUCTIONS AND CLOSING.**
501       **12.1.**   **Closing Documents and Closing Information.** Seller and Buyer will cooperate with the Closing Company to
502 enable the Closing Company to prepare and deliver documents required for Closing to Buyer and Seller and their designees. If
503 Buyer is obtaining a new loan to purchase the Property, Buyer acknowledges Buyer's lender is required to provide the Closing
504 Company, in a timely manner, all required loan documents and financial information concerning Buyer's new loan. Buyer and
505 Seller will furnish any additional information and documents required by Closing Company that will be necessary to complete this
506 transaction. Buyer and Seller will sign and complete all customary or reasonably required documents at or before Closing.

---

507     **12.2.**   **Closing Instructions.** Colorado Real Estate Commission's Closing Instructions ☐ **Are** ☒ **Are Not** executed with
508 this Contract.
509     **12.3.**   **Closing.** Delivery of deed from Seller to Buyer will be at closing (Closing). Closing will be on the date specified as
510 the **Closing Date** (§ 3) or by mutual agreement at an earlier date. The hour and place of Closing will be as designated by
511 *trustee*.
512     **12.4.**   **Disclosure of Settlement Costs.** Buyer and Seller acknowledge that costs, quality, and extent of service vary
513 between different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

514 **13.**   **TRANSFER OF TITLE.** Subject to tender of payment at Closing as required herein and compliance by Buyer with the
515 other terms and provisions hereof, Seller must execute and deliver a good and sufficient *seller will execute and*
    *deliver a "Trustee's Deed"* deed
516 to Buyer, at Closing, conveying the Property free and clear of all taxes except the general taxes for the year of Closing. Except as
517 provided herein, title will be conveyed free and clear of all liens, including any governmental liens for special improvements
518 installed as of the date of Buyer's signature hereon, whether assessed or not. Title will be conveyed subject to:
519     **13.1.**   Those specific Exceptions described by reference to recorded documents as reflected in the Title Documents
520 accepted by Buyer in accordance with **Record Title** (§ 8.2),
521     **13.2.**   Distribution utility easements (including cable TV),
522     **13.3.**   Those specifically described rights of third parties not shown by the public records of which Buyer has actual
523 knowledge and which were accepted by Buyer in accordance with **Off-Record Title** (§ 8.3) and **Current Survey Review** (§ 9),
524     **13.4.**   Inclusion of the Property within any special taxing district, and
525     **13.5.**   Other *none..*

526 **14.**   **PAYMENT OF ENCUMBRANCES.** Any encumbrance required to be paid will be paid at or before Closing from the
527 proceeds of this transaction or from any other source.

528 **15.**   **CLOSING COSTS, CLOSING FEE, ASSOCIATION FEES AND TAXES.**
529     **15.1.**   **Closing Costs.** Buyer and Seller must pay, in Good Funds, their respective closing costs and all other items required
530 to be paid at Closing, except as otherwise provided herein.
531     **15.2.**   **Closing Services Fee.** The fee for real estate closing services must be paid at Closing by ☐ **Buyer** ☐ **Seller**
532 ☒ **One-Half by Buyer and One-Half by Seller** ☐ **Other** _____.
533     **15.3.**   **Status Letter and Record Change Fees.** Any fees incident to the issuance of Association's statement of
534 assessments (Status Letter) must be paid by ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **None**.
535 Any record change fee assessed by the Association including, but not limited to, ownership record transfer fees regardless of name
536 or title of such fee (Association's Record Change Fee) must be paid by ☐ **Buyer** ☐ **Seller** ☒ **One-Half by Buyer and One-**
537 **Half by Seller** ☐ **None**.
538     **15.4.**   **Local Transfer Tax.** ☐ **The Local Transfer Tax** of *N/A* % of the Purchase Price must be paid at Closing by
539 ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **None**.
540     **15.5.**   **Private Transfer Fee.** Private transfer fees and other fees due to a transfer of the Property, payable at Closing, such
541 as community association fees, developer fees and foundation fees, must be paid at Closing by ☐ **Buyer** ☐ **Seller** ☐ **One-**
542 **Half by Buyer and One-Half by Seller** ☐ **None**. The Private Transfer fee, whether one or more, is for the following
543 association(s): *N/A* in the total amount of *N/A* % of the Purchase
544 Price or $ *N/A*.
545     **15.6.**   **Water Transfer Fees.** The Water Transfer Fees can change. The fees, as of the date of this Contract, do not exceed
546 $ *N/A* for:
547     ☐ Water Stock/Certificates     ☐ Water District
548     ☐ Augmentation Membership ☐ Small Domestic Water Company   ☐ *N/A*
549 and must be paid at Closing by ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **None**.
550     **15.7.**   **Sales and Use Tax.** Any sales and use tax that may accrue because of this transaction must be paid when due by
551 ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **None**.

552 **16.**   **PRORATIONS.** The following will be prorated to **Closing Date** (§ 3), except as otherwise provided:
553     **16.1.**   **Taxes.** Personal property taxes, if any, special taxing district assessments, if any, and general real estate taxes for the
554 year of Closing, based on ☐ **Taxes for the Calendar Year Immediately Preceding Closing** ☐ **Most Recent Mill Levy and**
555 **Most Recent Assessed Valuation**, adjusted by any applicable qualifying seniors property tax exemption, qualifying disabled
556 veteran exemption or ☒ **Other** *as requested by Trustee*.
557     **16.2.**   **Rents.** Rents based on ☐ **Rents Actually Received** ☐ **Accrued**. At Closing, Seller will transfer or credit to
558 Buyer the security deposits for all Leases assigned, or any remainder after lawful deductions, and notify all tenants in writing of

---

559   such transfer and of the transferee's name and address. Seller must assign to Buyer all Leases in effect at Closing and Buyer must
560   assume Seller's obligations under such Leases.
561       **16.3.**   **Association Assessments.** Current regular Association assessments and dues (Association Assessments) paid in
562   advance will be credited to Seller at Closing. Cash reserves held out of the regular Association Assessments for deferred
563   maintenance by the Association will not be credited to Seller except as may be otherwise provided by the Governing Documents.
564   Buyer acknowledges that Buyer may be obligated to pay the Association, at Closing, an amount for reserves or working capital.
565   Any special assessment assessed prior to **Closing Date** (§ 3) by the Association will be the obligation of ☐ **Buyer** ☐ **Seller**.
566   Except however, any special assessment by the Association for improvements that have been installed as of the date of Buyer's
567   signature hereon, whether assessed prior to or after Closing, will be the obligation of Seller. Seller represents that the Association
568   Assessments are currently payable at approximately $ ***N/A*** per ***N/A*** and that there are no unpaid regular
569   or special assessments against the Property except the current regular assessments and ***N/A***. Such
570   assessments are subject to change as provided in the Governing Documents. Seller agrees to promptly request the Association to
571   deliver to Buyer before **Closing Date** (§ 3) a current Status Letter.
572       **16.4.**   **Other Prorations.** Water and sewer charges, propane, interest on continuing loan, and ***none.*** .
573       **16.5.**   **Final Settlement.** Unless otherwise agreed in writing, these prorations are final.

574   **17.   POSSESSION.** Possession of the Property will be delivered to Buyer on **Possession Date** (§ 3) at **Possession Time** (§ 3),
575   subject to the Leases as set forth in § 10.6.1.1.
576
577       If Seller, after Closing, fails to deliver possession as specified, Seller will be subject to eviction and will be additionally liable
578   to Buyer for payment of $ *N/A* per day (or any part of a day notwithstanding § 18.1) from **Possession Date** (§ 3) and
579   **Possession Time** (§ 3) until possession is delivered.
580       Buyer represents that Buyer will occupy the Property as Buyer's principal residence unless the following box is checked,
581   then Buyer ☐ **Does Not** represent that Buyer will occupy the Property as Buyer's principal residence.

582   **Note:** If the parties agree to execute a Post-Closing Occupancy Agreement, the document should appear in **Attachments** (§ 31).
583

584   ┌─────────────────────────────┐<br>│ **GENERAL PROVISIONS** │<br>└─────────────────────────────┘

585   **18.   DAY; COMPUTATION OF PERIOD OF DAYS, DEADLINE.**
586       **18.1.**   **Day.** As used in this Contract, the term "day" means the entire day ending at 11:59 p.m., United States Mountain
587   Time (Standard or Daylight Savings as applicable).
588       **18.2.**   **Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not specified,
589   the first day is excluded and the last day is included (e.g., three days after MEC). If any deadline falls on a Saturday, Sunday or
590   federal or Colorado state holiday (Holiday), such deadline ☒ **Will** ☐ **Will Not** be extended to the next day that is not a
591   Saturday, Sunday or Holiday. Should neither box be checked, the deadline will not be extended.

592   **19.   CAUSES OF LOSS, INSURANCE; DAMAGE TO INCLUSIONS AND SERVICES; CONDEMNATION; AND**
593   **WALK-THROUGH.** Except as otherwise provided in this Contract, the Property, Inclusions or both will be delivered in the
594   condition existing as of the date of this Contract, ordinary wear and tear excepted.
595       **19.1.**   **Causes of Loss, Insurance.** In the event the Property or Inclusions are damaged by fire, other perils or causes of
596   loss prior to Closing in an amount of not more than ten percent of the total Purchase Price (Property Damage), Seller is obligated
597   to repair the same before **Closing Date** (§ 3). Buyer has the Right to Terminate under § 25.1, on or before **Closing Date** (§ 3), if
598   the Property Damage is not repaired before **Closing Date** (§ 3) or if the damage exceeds such sum. Should Buyer elect to carry out
599   this Contract despite such Property Damage, Buyer is entitled to a credit at Closing for all insurance proceeds that were received
600   by Seller (but not the Association, if any) resulting from such damage to the Property and Inclusions, plus the amount of any
601   deductible provided for in such insurance policy. Such credit must not exceed the Purchase Price. In the event Seller has not
602   received such insurance proceeds prior to Closing, the parties may agree to extend the **Closing Date** (§ 3) or, at the option of
603   Buyer, Seller must assign such proceeds at Closing, plus credit Buyer the amount of any deductible provided for in such insurance
604   policy, but not to exceed the total Purchase Price.
605       **19.2.**   **Damage, Inclusions and Services.** Should any Inclusion or service (including utilities and communication
606   services), system, component or fixture of the Property (collectively Service), e.g., heating or plumbing, fail or be damaged
607   between the date of this Contract and Closing or possession, whichever is earlier, then Seller is liable for the repair or replacement
608   of such Inclusion or Service with a unit of similar size, age and quality, or an equivalent credit, but only to the extent that the
609   maintenance or replacement of such Inclusion or Service is not the responsibility of the Association, if any, less any insurance
610   proceeds received by Buyer covering such repair or replacement. If the failed or damaged Inclusion or Service is not repaired or
611   replaced on or before Closing or possession, whichever is earlier, Buyer has the Right to Terminate under § 25.1, on or before

---

Buyer initials ___ *MMate* ___      Seller initials _____

612 **Closing Date** (§ 3), or, at the option of Buyer, Buyer is entitled to a credit at Closing for the repair or replacement of such
613 Inclusion or Service. Such credit must not exceed the Purchase Price. If Buyer receives such a credit, Seller's right for any claim
614 against the Association, if any, will survive Closing. Seller and Buyer are aware of the existence of pre-owned home warranty
615 programs that may be purchased and may cover the repair or replacement of such Inclusions.

616     **19.3.**   **Condemnation.** In the event Seller receives actual notice prior to Closing that a pending condemnation action may
617 result in a taking of all or part of the Property or Inclusions, Seller must promptly notify Buyer, in writing, of such condemnation
618 action. Buyer has the Right to Terminate under § 25.1, on or before **Closing Date** (§ 3), based on such condemnation action, in
619 Buyer's sole subjective discretion. Should Buyer elect to consummate this Contract despite such diminution of value to the
620 Property and Inclusions, Buyer is entitled to a credit at Closing for all condemnation proceeds awarded to Seller for the diminution
621 in the value of the Property or Inclusions but such credit will not include relocation benefits or expenses, or exceed the Purchase
622 Price.

623     **19.4.**   **Walk-Through and Verification of Condition.** Buyer, upon reasonable notice, has the right to walk through the
624 Property prior to Closing to verify that the physical condition of the Property and Inclusions complies with this Contract.

625 **20.**   **RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this Contract, Buyer and Seller acknowledge
626 that the respective broker has advised that this Contract has important legal consequences and has recommended the examination
627 of title and consultation with legal and tax or other counsel before signing this Contract.

628 **21.**   **TIME OF ESSENCE, DEFAULT AND REMEDIES.** Time is of the essence hereof. If any note or check received as
629 Earnest Money hereunder or any other payment due hereunder is not paid, honored or tendered when due, or if any obligation
630 hereunder is not performed or waived as herein provided, the nondefaulting party has the following remedies:

631     **21.1.**   **If Buyer is in Default:**
632 ☐     **21.1.1.**   **Specific Performance.** Seller may elect to treat this Contract as canceled, in which case all Earnest Money
633 (whether or not paid by Buyer) will be paid to Seller and retained by Seller; and Seller may recover such damages as may be
634 proper; or Seller may elect to treat this Contract as being in full force and effect and Seller has the right to specific performance or
635 damages, or both.

636     **21.1.2.**   **Liquidated Damages, Applicable. This § 21.1.2 applies unless the box in § 21.1.1. is checked**. All
637 Earnest Money (whether or not paid by Buyer) will be paid to Seller, and retained by Seller. Both parties will thereafter be released
638 from all obligations hereunder. It is agreed that the Earnest Money specified in § 4.1 is LIQUIDATED DAMAGES, and not a
639 penalty, which amount the parties agree is fair and reasonable and (except as provided in §§ 10.4, 22, 23 and 24), said payment of
640 Earnest Money is SELLER'S ONLY REMEDY for Buyer's failure to perform the obligations of this Contract. Seller expressly
641 waives the remedies of specific performance and additional damages.

642     **21.2.**   **If Seller is in Default:** Buyer may elect to treat this Contract as canceled, in which case all Earnest Money received
643 hereunder will be returned and Buyer may recover such damages as may be proper, or Buyer may elect to treat this Contract as
644 being in full force and effect and Buyer has the right to specific performance or damages, or both.

645 **22.**   **LEGAL FEES, COST AND EXPENSES.** Anything to the contrary herein notwithstanding, in the event of any arbitration
646 or litigation relating to this Contract, prior to or after **Closing Date** (§ 3), the arbitrator or court must award to the prevailing party
647 all reasonable costs and expenses, including attorney fees, legal fees and expenses.

648 **23.**   **MEDIATION.** If a dispute arises relating to this Contract, prior to or after Closing, and is not resolved, the parties must first
649 proceed in good faith to submit the matter to mediation. Mediation is a process in which the parties meet with an impartial person
650 who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the
651 dispute must agree, in writing, before any settlement is binding. The parties will jointly appoint an acceptable mediator and will
652 share equally in the cost of such mediation. The mediation, unless otherwise agreed, will terminate in the event the entire dispute is
653 not resolved within thirty days of the date written notice requesting mediation is delivered by one party to the other at the party's
654 last known address. This section will not alter any date in this Contract, unless otherwise agreed.

655 **24.**   **EARNEST MONEY DISPUTE.** Except as otherwise provided herein, Earnest Money Holder must release the Earnest
656 Money following receipt of written mutual instructions, signed by both Buyer and Seller. In the event of any controversy regarding
657 the Earnest Money, Earnest Money Holder is not required to release the Earnest Money. Earnest Money Holder, in its sole
658 subjective discretion, has several options: (1) wait for any proceeding between Buyer and Seller; (2) interplead all parties and
659 deposit Earnest Money into a court of competent jurisdiction, (Earnest Money Holder is entitled to recover court costs and
660 reasonable attorney and legal fees incurred with such action); or (3) provide notice to Buyer and Seller that unless Earnest Money
661 Holder receives a copy of the Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the
662 lawsuit (Lawsuit) within one hundred twenty days of Earnest Money Holder's notice to the parties, Earnest Money Holder is
663 authorized to return the Earnest Money to Buyer. In the event Earnest Money Holder does receive a copy of the Lawsuit, and has
664 not interpled the monies at the time of any Order, Earnest Money Holder must disburse the Earnest Money pursuant to the Order

665 of the Court. The parties reaffirm the obligation of **Mediation** (§ 23). This Section will survive cancellation or termination of this
666 Contract.

667 **25.  TERMINATION.**
668      **25.1.   Right to Terminate.** If a party has a right to terminate, as provided in this Contract (Right to Terminate), the
669 termination is effective upon the other party's receipt of a written notice to terminate (Notice to Terminate), provided such written
670 notice was received on or before the applicable deadline specified in this Contract. If the Notice to Terminate is not received on or
671 before the specified deadline, the party with the Right to Terminate accepts the specified matter, document or condition as
672 satisfactory and waives the Right to Terminate under such provision.
673      **25.2.   Effect of Termination.** In the event this Contract is terminated, all Earnest Money received hereunder will be
674 returned and the parties are relieved of all obligations hereunder, subject to §§ 10.4, 22, 23 and 24.

675 **26.   ENTIRE AGREEMENT, MODIFICATION, SURVIVAL.** This Contract, its exhibits and specified addenda, constitute
676 the entire agreement between the parties relating to the subject hereof, and any prior agreements pertaining thereto, whether oral or
677 written, have been merged and integrated into this Contract. No subsequent modification of any of the terms of this Contract is
678 valid, binding upon the parties, or enforceable unless made in writing and signed by the parties. Any right or obligation in this
679 Contract that, by its terms, exists or is intended to be performed after termination or Closing survives the same.

680 **27.   NOTICE, DELIVERY, AND CHOICE OF LAW.**
681      **27.1.   Physical Delivery.** All notices must be in writing, except as provided in § 27.2. Any document, including a signed
682 document or notice, from or on behalf of Seller, and delivered to Buyer is effective when physically received by Buyer, any
683 signatory on behalf of Buyer, any named individual of Buyer, any representative of Buyer, or Brokerage Firm of Broker working
684 with Buyer (except for delivery, after Closing, of the notice requesting mediation described in § 23 and except as provided in
685 § 27.2). Any document, including a signed document or notice, from or on behalf of Buyer, and delivered to Seller is effective
686 when physically received by Seller, any signatory on behalf of Seller, any named individual of Seller, any representative of Seller,
687 or Brokerage Firm of Broker working with Seller (except for delivery, after Closing, of the notice requesting mediation described
688 in § 23 and except as provided in § 27.2).
689      **27.2.   Electronic Delivery.** As an alternative to physical delivery, any document, including a signed document or written
690 notice, may be delivered in electronic form only by the following indicated methods: ☒ **Facsimile** ☒ **Email** ☒ **Internet**. If no
691 box is checked, this § 27.2 is not applicable and § 27.1 governs notice and delivery. Documents with original signatures will be
692 provided upon request of any party.
693      **27.3.   Choice of Law.** This Contract and all disputes arising hereunder are governed by and construed in accordance with
694 the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in Colorado for property
695 located in Colorado.

696 **28.   NOTICE OF ACCEPTANCE, COUNTERPARTS.** This proposal will expire unless accepted in writing, by Buyer and
697 Seller, as evidenced by their signatures below, and the offering party receives notice of such acceptance pursuant to § 27 on or
698 before **Acceptance Deadline Date** (§ 3) and **Acceptance Deadline Time** (§ 3). If accepted, this document will become a contract
699 between Seller and Buyer. A copy of this Contract may be executed by each party, separately, and when each party has executed a
700 copy thereof, such copies taken together are deemed to be a full and complete contract between the parties.

701 **29.   GOOD FAITH.** Buyer and Seller acknowledge that each party has an obligation to act in good faith including, but not
702 limited to, exercising the rights and obligations set forth in the provisions of **Financing Conditions and Obligations** (§ 5), **Title**
703 **Insurance, Record Title and Off-Record Title** (§ 8), **Current Survey Review** (§ 9) and **Property Disclosure, Inspection,**
704 **Indemnity, Insurability, Due Diligence, Buyer Disclosure and Source of Water** (§ 10).
705

706   **ADDITIONAL PROVISIONS AND ATTACHMENTS**

707 **30.   ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate
708 Commission.)
709   **(1) Bankruptcy Court Approval.**

   **This contract is subject to, and shall not become effective until approved**
   **by written Order of the Bankruptcy Court in the Bankruptcy Case upon such notice**
   **as may be required.   Trustee shall apply to the Bankruptcy Court for an Order**
   **approving this contract.   Written notice of the motion shall be mailed to the**
   **United States Trustee and all interested parties pursuant to Fed.R.Bankr.P.**

*2002 and Local Bankruptcy Rule 9013-1. The sale of the Property to Buyer, closing, and payment of any real estate broker fees by the bankruptcy estate is subject to Bankruptcy Court approval and potential overbid by third parties, including the Debtor.*

*(2) Sale As Is, Where Is, No Representations of Any Kind by Trustee.*

*A. Trustee has not acquired the Property for the purposes of maintaining the same, but rather for the sole purpose of liquidating the same under the Bankruptcy Code.*

*B. Due to the unique nature of the bankruptcy case, Trustee has not inspected the Property, has not personally used the Property and is unaware of the true condition of the Property.*

*C. Trustee is unable to make, shall not be required to make and shall not be deemed to have made, any representation or warranty whatsoever as to the physical condition of the Property or as to the operative or proposed governmental laws and regulations, zoning, environmental and land use laws regulations to which the Property may be subject.*

*D. In this regard, the purchase of the Property must be solely on the basis of the Buyer's own review and investigation of the applicability and effect of such laws and regulations. Although Trustee may reasonably cooperate with Buyer's inspection and review of documents, Trustee cannot and shall not assume the risk that adverse matters may not have been disclosed to Buyer by Buyer's investigation.*

*E. As a standard matter of practice involving properties conveyed from bankruptcy estates through court-approved administrators, Trustee's limited knowledge of the Property as the Trustee of a bankruptcy estate does not permit Trustee to sell the Property other than in its present "AS-IS" condition, subject to all faults. Accordingly, the Property being sold hereunder is sold "AS IS, WHERE IS, AND WITH ALL FAULTS WITH NO REPRESENTATION MADE BY THE SELLER."*

710
711
712
713
714
715
716
717 **31. ATTACHMENTS.**
718    **31.1.**    The following attachments **are a part** of this Contract:
719 *none.*
720
721
722    **31.2.**    The following disclosure forms **are attached** but are **not** a part of this Contract:
723 *none.*
724
725
726

727

| SIGNATURES |
| --- |

728

Buyer's Name: *Sisu Investments, L P*

Buyer initials _____          Seller initials _____

*Michael Vogel, MGR of the GP*

C83767C410E0406...

6/15/2014

| | | |
|---|---|---|
| Buyer's Signature | *Michael Vogel, MGR of the GP* | Date |
| Address: | *P.O. Box 2165* | |
| | *Fort Collins, CO 80522* | |
| Phone No.: | | |
| Fax No.: | | |
| Electronic Address: | | |

729
730    **[NOTE: If this offer is being countered or rejected, do not sign this document. Refer to § 32]**


Seller's Name: *The Estate of Intlekofer, Joli A. Lofstedt, Trustee*


| | | |
|---|---|---|
| Seller's Signature | *Joli A. Lofstedt Chapter 7* | Date |
| *Trustee* | | |
| Address: | *950 Spruce Street Suite 1C* | |
| | *Louisville, CO 80027* | |
| Phone No.: | *303-661-9292* | |
| Fax No.: | *303-661-9555* | |
| Electronic Address: | *joli@crlpc.com* | |

731
732    **32.   COUNTER; REJECTION.** This offer is ☐ **Countered** ☐ **Rejected.**
733    **Initials only of party (Buyer or Seller) who countered or rejected offer** _____
734

---
**END OF CONTRACT TO BUY AND SELL REAL ESTATE**
---


**33. BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.**
(To be completed by Broker working with Buyer)

Broker ☐ **Does** ☐ **Does Not** acknowledge receipt of Earnest Money deposit and, while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under § 23. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder will release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money will be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared.

Broker is working with Buyer as a ☐ **Buyer's Agent** ☐ **Seller's Agent** ☒ **Transaction-Broker** in this transaction.
☐ This is a **Change of Status**.

Brokerage Firm's compensation or commission is to be paid by ☒ **Listing Brokerage Firm** ☐ **Buyer** ☐ **Other** _____.

| | |
|---|---|
| Brokerage Firm's Name: | *David Lund* |
| Broker's Name: | *David Lund* |

DocuSign Envelope ID: B3F29BB1-EC98-4836-80A6-93EC4CD53198

DocuSigned by:

*David Lund*

F969E7C7BBC64C1...

6/15/2014

Broker's Signature:                  Date

Address:          **PO Box 2165**
                   **Fort Collins, CO 80522**

Phone No.:        **(970)599-1655**

Fax No.:          **(970)292-6116**

Electronic Address: _____

---

**34. BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.**
(To be completed by Broker working with Seller)

Broker ☐ **Does** ☐ **Does Not** acknowledge receipt of Earnest Money deposit and, while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under § 23. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder will release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money will be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared.

Broker is working with Seller as a ☐ **Seller's Agent** ☐ **Buyer's Agent** ☐ **Transaction-Broker** in this transaction.
☐ This is a **Change of Status**.

Brokerage Firm's compensation or commission is to be paid by ☐ **Seller** ☐ **Buyer** ☐ **Other**_____.

Brokerage Firm's Name: _____
Broker's Name: _____

_____
Broker's Signature:               Date

Address: _____
_____

Phone No.: _____

Fax No.: _____

Electronic Address: _____

735

---

**Buyer initials** _____               **Seller initials** _____